CLERKS OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED
October 30, 2025
LAURA A. AUSTIN, CLERK
BY: s/ FELICIA CLARK
    DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | Case No. 1:08CR00052-001 |
| v. ) | **OPINION AND ORDER** |
| ) | |
| **DONNELL EDWARD CALLAHAM,** ) | JUDGE JAMES P. JONES |
| ) | |
| Defendant. ) | |

*Carrie Macon*, Assistant United States Attorney, Abingdon, Virginia, for United States; *Nancy Dickenson-Vicars*, Assistant Federal Public Defender, Abingdon, Virginia, for Defendant.

Donnell Edward Callaham, previously sentenced by this Court, has filed a Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A). For the following reasons, his motion will be denied.

I.

Donnell Edward Callaham pled guilty, pursuant to a plea agreement, to knowingly possessing a firearm after having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1), possession of stolen firearms, in violation of 18 U.S.C. § 922(j), possessing a firearm with the manufacturer's serial number removed, obliterated, and altered, in violation of 18 U.S.C. § 922(k), and conspiracy to possess stolen firearms and to possess a firearm with the manufacturer's serial number removed, obliterated, and altered, in violation of 18 U.S.C. § 371. After he pleaded

guilty and before sentencing, Callaham attempted to withdraw his guilty plea, which was denied. On July 16, 2009, Callaham was sentenced to 324 months of imprisonment. The judgment was affirmed on appeal. *United States v. Callaham*, 400 F. App'x 775 (4th Cir. 2010) (unpublished), *cert. denied*, 562 U.S. 1264 (2011). Callaham's projected prison release date is October 31, 2033.

Callaham signed and mailed his Motion for Compassionate Release on October 31, 2024. In his initial pro se motion, Callaham claimed that he suffers from serious health issues and that the Bureau of Prisons (BOP) has failed to provide proper medical care or testing. He also alleged that his release was warranted due to COVID-19 and that there is a sentencing disparity between the sentence he received and the sentence he would have received if sentenced today. Further, he claimed that he was improperly denied credit for prior time in state custody.

The Federal Public Defender was appointed to represent Callaham on his motion. On May 13, 2025, Callaham's attorney filed a supplemental motion elaborating on Callaham's claims that the BOP has not provided him with adequate medical treatment. Counsel also explained how Callaham has rehabilitated himself while incarcerated.

The government opposes Callaham's release.

On January 16, 2025, Callaham's medical provider recommended that he receive a colonoscopy based on his symptoms. Med. Recs. 3, Dkt. No. 165, Ex. 1.

The records show that on May 6, 2025, the BOP directed that he be transferred from FCI McDowell to FCI Beckley, the stated reason being an "Increase in Medical Care Level." Transfer Order, Dkt. No 171. But nearly ten months after the doctor's recommendation for a colonoscopy, it appears that Callaham has yet to be scheduled for such a procedure.[1]

On August 15, 2025, I ordered the parties to advise as to whether Callaham had received the colonoscopy that his medical provider believed was appropriate. They advised that he had not. On October 22, 2025, counsel for Callaham submitted a letter from Amy Kossoff, M.D., a primary care physician, who provided her opinion that Callaham's care while incarcerated has been inadequate.[2] In particular, she opined that the delay in providing a colonoscopy was contrary to the medical standard of care.

## II.

A sentence may be reduced if "extraordinary and compelling reasons warrant such a reduction" and the reduction "is consistent with applicable policy statements

---

[1] The parties advise that he had been hospitalized for a week in September of 2025 with an acute kidney injury.

[2] Dr. Kossoff has provided opinions for other inmates in cases seeking compassionate release on the ground of delayed prison medical care. *United States v. Dixon*, No. 23-6063, 2024 WL 725885, at *1 (2d Cir. Feb. 22, 2024) (unpublished); *United States v. McKinney*, No. 20-CR-6043DGL, 2024 WL 1843918, at *1 (W.D.N.Y. Apr. 29, 2024); *United States v. Maldonado*, No. 1:14-cr-338 (RDA), 2022 WL 7610270, at *3–4 (E.D. Va. Oct. 13, 2022).

issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The Sentencing Commission has adopted such policy statements. U.S. Sent'g Guidelines Manual (USSG) § 1B1.13 (U.S. Sent'g Comm'n 2024). One of the policy grounds provides that an extraordinary and compelling ground exists when "[t]he defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." USSG § 1B1.13 (b)(1)(C). Even if the court finds an extraordinary and compelling reason for reduction, the court must consider the applicable 18 U.S.C. § 3553(a) factors. *United States v. Kibble*, 992 F.3d 326, 331 (4th Cir. 2021). A defendant seeking compassionate release has the burden of establishing that it is warranted. *United States v. Bryant*, 720 F. Supp. 3d 450, 455 (W.D. Va. 2024).

I.

The reasons Callaham provides for a reduction in his sentence do not warrant his release.

First, although Callaham has not yet received a colonoscopy, he has received treatment for a range of other medical conditions. While at FCI McDowell, Callaham underwent extensive testing and was referred to specialists. His medical records show that he had a positive Fecal Immunochemical Test (FIT), which can indicate colon cancer as a possible condition. It was for this reason that Callaham's

provider at FCI McDowell recommended a colonoscopy.  However, Callaham was transferred to FCI Beckley in May 2025, only a few months later.  Since his transfer to FCI Beckley, Callaham has received further treatment for other serious conditions.  His medical records from FCI Beckley show a request for specialized care for a liver condition.  As noted above, Callaham was subsequently hospitalized for a week for yet another ailment.  In light of Callaham's multiple serious health issues, it appears Callaham has been getting a range of care during his time in custody.  I do not find that the record shows his medical needs have been neglected.  Even if BOP's failure to provide a colonoscopy up to this point constituted a lack of medical care, consideration of the sentencing factors weighs against granting release.

Second, the alleged disparity in Callaham's sentence does not qualify him for relief because a compassionate release motion is not the appropriate vehicle to attack the validity of a sentence itself.  Callaham claims that the government failed to provide sufficient evidence to justify a sentencing enhancement under USSG § 3C1.2 for recklessly creating a substantial risk of death or serious bodily injury in the course of fleeing from a law enforcement officer.  The government points out that Callaham appealed this sentencing enhancement, and the court of appeals affirmed its application, explaining that "the evidence and testimony adduced at the sentencing hearing leaves us without doubt that the district court did not clearly err

in imposing the enhancement in this case." *United States v. Callaham*, 400 F. App'x at 777.

Further, Callaham has not identified a change in the law that would entitle him to a downward departure in sentencing for acceptance of responsibility. Although Callaham's attempt to withdraw his guilty plea before sentencing was denied, Callaham's withdrawal attempt still weighs on whether he accepted responsibility for his actions. This analysis has not changed from the time of Callaham's sentencing. Accordingly, alleged errors in Callaham's sentence do not warrant his release.

Third, Callaham asserts that prison conditions due to COVID-19 justify his release. However, available BOP data show that COVID-19 outbreaks are under control at the facilities where Callaham has been incarcerated. Callaham does not provide any information to the contrary. Thus, previous COVID-19 outbreaks are not sufficient reasons for compassionate release today.

Fourth, Callaham alleges that his federal sentence should have been reduced based on time he served in state custody. Callaham claims that these credits should reduce his federal sentence by three years, eight months, and 23 days. The government correctly notes that a compassionate release motion is not the appropriate path to challenge the computation of a federal sentence or claim credit from a prior state sentence. If Callaham intends to challenge his federal sentence

based on desired credits from his state sentence, he may do so under 28 U.S.C. § 2241.

Finally, Callaham argues that his rehabilitation and the 18 U.S.C. § 3553(a) factors weigh in favor of his release. Callaham notes his clean conduct over nearly 16 years of imprisonment and employment while in prison. While Callaham's efforts at rehabilitation are admirable, rehabilitation alone is not an extraordinary and compelling reason for release. Regarding the § 3553(a) factors, Callaham has not met his burden to show that they merit his release. Callaham has a lengthy criminal history, which includes many violent offenses. Callaham explains that he is committed to his rehabilitation, but the interests of deterrence for his serious crimes justify Callaham's present sentence.

Accordingly, it is **ORDERED** that the Motion for Compassionate Release, Dkt. No. 148, and the Supplemental Motion for Compassionate Release, Dkt. No. 158, are DENIED.

ENTER: October 30, 2025

/s/  JAMES P. JONES
Senior United States District Judge